UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RICHARD E. O'DONNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:08CV363 TCM |
| ) | |
| ST. LOUIS COUNTY DEPARTMENT ) | |
| OF JUSTICE SERVICES , ) | |
| ) | |
| Defendants. ) | |

### **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court upon the motion of plaintiff (registration no. 685), an inmate at St. Louis County Justice Center, for leave to commence this action without payment of the required filing fee [Doc. #2]. For the reasons stated below, the Court finds that plaintiff does not have sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.83. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### **28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must

assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint. A review of plaintiff's account indicates an average monthly deposit of $9.14, and an average monthly balance of $2.64. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $1.83, which is 20 percent of plaintiff's average monthly deposit.

### 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact."

*Neitzke v. Williams,* 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

**The Complaint**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, broadly alleging several violations of his constitutional rights. Named as defendants are: St. Louis County Justice Center[1]; Roy Mueller (Director); Charles Dooley (County Executive); Unknown Thompson (correctional officer); Unknown Corona (correctional officer); Unknown West (correctional officer). Plaintiff generally asserts that during his time as a detainee at the St. Louis County Justice Center he has been treated with "disrespect, prejudice, bias and hatred." He claims that unidentified persons at the Justice Center "act like

---

[1]Although identified in the caption of his complaint as "St. Louis County Department of Justice Service," plaintiff clarifies in the body of his complaint that he is bringing his claims against the "county jail."

they listen to a resident's complaint or problem but then when they leave the pod they laugh at [the prisoners] behind [their] backs." Plaintiff claims that Charles Dooley and Roy Mueller should be aware of the disrespect exhibited by the staff and the staff's failure to follow unidentified "policies and rules." He additionally asserts that defendants Thompson and West are "prejudiced toward whites," claiming that when he asked defendant West for toilet paper he was told that he didn't give out toilet paper, but "let a black ask and it is how many rolls do you want." Plaintiff also claims that defendant West has allowed a black inmate, who was supposed to be on "lockdown" for disciplinary reasons, use the phone, and that two correctional officers not named in this action allowed a different black inmate, also on lockdown, to enter another black inmate's cell to do his hair. Plaintiff does not, however, identify whether defendant West (or the other correctional officers) provide these same opportunities to all black inmates but failed to give he, or other white inmates, the same freedoms.

Plaintiff asserts that all of the inmates in his "pod" are punished if they take too long to clean their cells by the loss of half an hour of recreation time. Plaintiff additionally asserts, in a conclusory fashion, that he has been denied adequate medical treatment, stating that in the past six months he has lost weight, his ears have bled, he cannot always "control his urine," his back and feet are in pain and he has a loose

tooth. Plaintiff does not, however, detail his attempts at gaining medical treatment or identify the person or persons who allegedly denied him care.

Lastly, despite naming an Unknown Corona as a defendant in this action, plaintiff has not made any specific allegations against this defendant.

## Discussion

The complaint is silent as to whether defendants are being sued in their official or individual capacities. Where a "complaint is silent about the capacity in which [plaintiff] is suing defendant, [a district court must] interpret the complaint as including only official-capacity claims." *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir.1995); *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. To state a claim against a municipality or a government official in his or her official capacity, plaintiff must allege that a policy or custom of the governmental entity is responsible for the alleged constitutional violations. *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978). The instant complaint does not contain any allegations that a policy or custom of St. Louis County was responsible for the alleged violations of plaintiff's constitutional rights. As a result, the complaint fails to state a claim upon which relief can be granted.

Plaintiff's claims also fail for several additional reasons. Plaintiff's claim against the St. Louis County Justice Center (the county jail) is legally frivolous because the jail is not a suable entity. *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such."); *Catlett v. Jefferson County*, 299 F. Supp. 2d 967, 968-69 (E.D. Mo. 2004). Nor can plaintiff sustain a cause of action against defendants Dooley or Mueller as his claims against these two defendants sound in respondeat superior. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

Moreover, plaintiff's factual allegations fail to meet a prima facie case under 42 U.S.C. § 1983. To establish a prima facie case under § 1983, a plaintiff must allege two elements: (1) the action occurred "under color of law" and (2) the action is a deprivation of right of a constitutional right or a federal statutory right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Plaintiff's general and conclusory assertions that he is being treated with "disrespect, prejudice, bias and hatred" and that the corrections officers listen to a prisoner's complaints but then laugh at them do not allege deprivations of a constitutional or federal statutory right. This purported "verbal harassment" simply does not rise to the level required to establish a constitutional violation. *See, e.g., McDowell v. Jones*, 990 F.2d 433, 434 (8th Cri. 1993); *King v.*

*Olmsted*, 117 F.3d 1065, 1067 (8th Cir. 1997) (verbal harassment actionable only if it is so brutal and wantonly cruel that it shocks the conscience, or if the threat exerts coercive pressure on the plaintiff and the plaintiff suffers from a deprivation of a constitutional right).

Similarly, plaintiff's claims that his entire pod is punished, by losing a half an hour of relaxation, for failing to clean their cells fast enough does not rise to a constitutional violation. Although the denial of exercise or recreation can result in a constitutional violation, *Campbell v. Cauthron*, 623 F.2d 503, 506-07 (8th Cir.1980), the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979). Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated. The de minimis loss of a mere half an hour of recreation time, without more, does not arise to a constitutional violation in this instance.

Plaintiff's generalized claims of racial prejudice also fail to state a claim for relief. Although the Equal Protection Clause generally requires the government to treat similarly situated people alike, *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439(1985), dissimilar treatment of dissimilarly situated persons does not violate

equal protection. *See Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 21 F.3d 237, 242 (8th Cir.1994). Thus, the first step in an equal protection case is determining whether the plaintiff has alleged that he was treated differently than others who were similarly situated to him. *See, e.g., Samaad v. City of Dallas*, 940 F.2d 925, 940-41 (5th Cir.1991). Even assuming that plaintiff is white[2], he has not provided any specific allegations that he was treated differently than a similarly situated black inmate. Although he claims he was denied toilet paper on one occasion, he does not state that a black inmate, similarly situated to him, was provided the toilet paper. Rather, he generally asserts that "let a black ask and it is how many rolls do you want." Similarly, although plaintiff identifies two black inmates who he believes were given special privileges during lockdown, he does not state that he sought, or was not provided, these same privileges. Accordingly, plaintiff's generalized allegations of racial prejudice fail to state a claim for relief.

Nor do plaintiff's conclusory claims that he is being denied medical care (on some unspecified date, by some unspecified person) state a claim for relief.[3] "Liability

---

[2]Plaintiff has not identified his race.

[3]The Court additionally notes that plaintiff's denial of medical care claims fail for an entirely separate reason. To state a claim for medical mistreatment, plaintiff must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Vaughn v. Greene County*, 438 F.3d 845, 850 (8th Cir. 2006) ("Although this court has yet to establish a clear standard [for medical mistreatment] for pretrial

under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). In the instant action, plaintiff has not set forth any facts indicating that any of the named defendants were directly involved in or personally responsible for the alleged denials of medical care, and in fact, he has not cited any allegations whatsoever against defendant Corona. As a result, plaintiff's claims for denial of medical care, and any claim he might have against defendant Corona, fail to state a claim upon which relief can be granted.

Accordingly,

---

detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates."); *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (applying the Eighth Amendment deliberate indifference analysis to a pretrial detainee's Fourteenth Amendment claim); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Eighth Amendment); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995) (same). Allegations of mere negligence in giving or failing to supply medical treatment will not suffice. *Estelle*, 429 U.S. at 106. In order to show deliberate indifference, plaintiff must allege that he suffered objectively serious medical needs and that defendants actually knew of but deliberately disregarded those needs. *Vaughn*, 438 F.3d at 850. Plaintiff has failed to allege both an objectively serious medical need and/or that defendants knew that he was suffering serious medical problems but disregarded them.

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff shall pay an initial filing fee of $1.83 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint because the complaint is legally frivolous or fails to state a claim upon which relief can be granted, or both.

An appropriate Order of Dismissal shall accompany this Memorandum and Order.

Dated this 14th day of April, 2008.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE